UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JASON L. MCCLURG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 1:21 CV 73 ACL |
| | ) |
| BILL STANGE, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Jason L. McClurg for a writ of habeas corpus under 28 U.S.C. § 2254.  Also pending before the Court are the following *pro se* motions filed by McClurg: (1) "Motion to Submit New Evidence" (Doc. 21); (2) "Motion for the Court to Reconsider Ruling on Petitioner's Previous Motion to Submit DNA and Fingerprint Evidence" (Doc. 22); and "Motion to Submit New Evidence" (Doc. 24).

### I.  Procedural History

McClurg is currently incarcerated at Southeast Correctional Center in Charleston, Missouri, pursuant to the sentence and judgment of the Circuit Court of Howell County, Missouri.  (Doc. 5-4 at 144-45.)

On July 28, 2016, a jury found McClurg guilty of first-degree murder and escape from confinement.  *Id.*  The court sentenced McClurg to life imprisonment without the possibility of parole for murder and three years' imprisonment for escape from confinement, with the sentences to run consecutively.  *Id.*

In his single claim raised on direct appeal of his conviction, McClurg argued that the trial court abused its discretion in denying his motion for a continuance.  (Doc. 5-1 at 11.)  On March 26, 2018, the Missouri Court of Appeals affirmed McClurg's conviction.  (Doc. 5-3.)

1

In his amended post-conviction relief motion, McClurg raised nine ineffective assistance of trial counsel claims.  (Doc. 5-12 at 9-10.)   The motion court denied the motion after holding an evidentiary hearing.  *Id.* at 1-23.

In his appeal from the denial of post-conviction relief, McClurg argued that trial counsel was ineffective for not establishing that the pills he was alleged to have used to poison his wife will not dissolve in water.  (Doc. 5-5 at 12.)   He had raised this claim in his post-conviction relief motion.  (Doc. 5-12 at 9-10.)   On February 11, 2020, the Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 5-7.)

McClurg filed the instant Petition on May 4, 2021, in which he raises four grounds for relief.   McClurg first argues that he did not have enough pills "to do what [the] State claimed." (Doc. 1 at 4.)   He also contends that the pills "would not and will not dissolve in liquids."  *Id.* at 6.  McClurg next argues that his wife's mental history and past suicide attempts were not mentioned at trial.  *Id.* at 7.   Finally, McClurg argues that he had an alibi.  *Id.* at 9.

Respondent argues that the petition is untimely, McClurg's claims are procedurally defaulted, and his claims fail on their merits.

## II.  Facts[1]

The First Amended Information alleged that McClurg caused the death of his wife, Stephanie McClurg ("Victim"), "by causing [her] to consume prescription medications[.]"   The State's theory of the case was that McClurg wanted to kill Victim in order to be with his mistress, so he poisoned Victim by putting cyclobenzaprine and propranolol[2] in her bottle of Kool-Aid.   To persuade Victim to drink the concoction—which brought a grimace to her face

---

[1]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming the decision of the motion court.   (Doc. 5-7 at 2-3.)
[2]Evidence presented at trial indicated that cyclobenzaprine is a muscle relaxer, and propranolol is a blood pressure medication.

when she began drinking it—McClurg told Victim that their two-year-old son had mixed up the Kool-Aid himself, and that she should drink it no matter how bad it tasted.

Victim died the following day. The medical examiner found the cause of her death to be homicide, which resulted from a high level of cyclobenzaprine in Victim's bloodstream that caused an irregular heartbeat.

### III.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions

3

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### IV. Statute of Limitations

State prisoners can only file for federal habeas relief within one year of completing state review. 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). McClurg's direct review ended April 10, 2018, fifteen days after the court of appeals affirmed his conviction. Mo. Sup. Ct. R. 84.17.

The AEDPA's limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). McClurg filed a motion for post-conviction relief on June 1, 2018, which tolled the one-year period.

Under *Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006), the tolling continued until the Missouri Court of Appeals issued its mandate in McClurg's state post-conviction appeal on February 27, 2020. (Doc. 5-8.) This started the statute of limitations running one day later. *See id*. (under Missouri state court procedures, post-conviction relief proceedings are not final until the appellate court's mandate is issued); *King v. Hobbs*, 666 F.3d 1132, 1136 (8th Cir. 2012) (the AEDPA's statute of limitations starts to run the day after the event that triggers the time period, citing Fed. R. Civ. P. 6(a)(1)(A); *Moore v. United States*, 173 F.3d 1131, 1133-35 (8th Cir. 1999)). McClurg filed his petition in this Court on May 4, 2021. (Doc. 1.)

After the conclusion of direct review, 53 days passed before McClurg filed his post-conviction motion, and another 431 days passed after the post-conviction mandate issued before McClurg filed his petition in this Court, for a total of 484 days.   Thus, McClurg's petition filed on May 4, 2021 is untimely.

McClurg acknowledges that his petition was untimely filed, but argues that his untimeliness should be excused due to the "difficult times our country went [through] during the COVID-19 pandemic."   (Doc. 7 at 1.)   He states that he did not have "regular access to [the] law library" due to the pandemic and could not "retrieve certain documents" because of the pandemic.  *Id.*

"Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes."   *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotations omitted).   The Eighth Circuit has held that equitable tolling was not warranted "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources."   *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).   Furthermore, the court "will decline to apply the doctrine of equitable tolling if a habeas petitioner has not diligently pursued [their] rights."   *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) (citing *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007)).

Here, McClurg has not alleged that extraordinary circumstances beyond his control prevented him from timely filing his habeas petition.   Instead, he has made only bald assertions about the pandemic, without alleging how those circumstances directly affected his ability to file his habeas petition in a timely manner.   The Court notes that McClurg wrote to the Clerk of Court requesting additional time to file his petition based on decreased access to the library arising from the pandemic.   (Doc. 1-4 at 3.)   This correspondence was dated February 25, 2021,

which was already outside of the one-year statute of limitations. McClurg has failed to demonstrate that he was prevented from timely filing his petition or that he was diligently pursuing his rights.

Thus, the instant petition for habeas relief should be dismissed as untimely.

### V. Procedural Default

Respondent next argues that McClurg's claims are procedurally defaulted because he did not present them to the state courts.

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in state court in accordance with state procedural rules. *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). If the petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, McClurg did not properly raise any of the claims in the instant petition in the state court proceedings.

To establish legally sufficient cause for the procedural default, McClurg must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*,

6

501 U.S. at 750–52.   To establish actual prejudice, a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

McClurg does not attempt to demonstrate cause for his default.   Thus, McClurg's claims are procedurally defaulted.

## VI.   Petitioner's Claims

The Court has already found that the petition is untimely and that McClurg's claims are procedurally defaulted.   As will be briefly discussed below, his claims are also meritless.

**1.  Ground One**

In his first ground for relief, McClurg argues that he did not have enough pills to do what the State claimed.  (Doc. 1 at 4.)   The Court construes this claim as a challenge to the sufficiency of the evidence supporting McClurg's murder conviction.

In reviewing a challenge to a sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  *Accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).   The federal habeas court's scope of review is very limited.   The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted).

The evidence presented at trial demonstrated that McClurg planned to murder his wife so he could be with his mistress, and placed prescription medication in a bottle of Kool-Aid.   The autopsy of his wife's body demonstrated that the presence of that medication was the cause of

7

her death. In light of these facts, there was ample evidence from which a juror could find McClurg guilty of murder. McClurg has presented no new evidence to contradict any of the facts established at trial. Thus, his claim lacks merit.

### 2. Ground Two

In his second ground for relief, McClurg argues that the pills "would not and will not dissolve in liquids." *Id.* at 6. The Court construes this claim as another challenge to the sufficiency of the evidence.

In the post-conviction proceedings, McClurg raised a related argument that trial counsel was ineffective for not establishing that the pills will not dissolve in water. The Missouri Court of Appeals rejected this claim, finding McClurg was unable to demonstrate prejudice from counsel's failure to establish that cyclobenzaprine does not dissolve completely in water in light of the "overwhelming evidence of his guilt." (Doc. 5-7 at 4.) The Court cited the following evidence presented at trial that the jury was entitled to credit: McClurg told his mistress and her daughter that he planned to put pills in his wife's Kool-Aid and tell her to drink it because their son made it and this method would be "untraceable;" Victim's mother was present when her daughter drank the liquid and heard McClurg instruct Victim to drink the entire bottle, no matter how bad it tasted, so their son would know that she liked it; Victim grimaced when drinking the liquid from the bottle but drank it all; after Victim finished the contents of the bottle, McClurg rinsed the bottle and threw it in the trash; soon after Victim drank the bottle's contents, Victim's mother overheard McClurg asking Victim, "why would I put something in our—in your bottle?;" shortly after Victim drank the mixture, Victim experienced an episode in which she went still and was unresponsive; testing of the bottle showed the presence of propranolol and cyclobenzaprine, both of which were prescribed for McClurg but not Victim; a toxicologist testified that Victim's blood contained the low end of the range of cyclobenzaprine that can kill a

8

person; Victim's blood also contained non-lethal levels of propranolol; the medical examiner testified that mixing the drugs into a drink would be a feasible way of getting them into Victim's system; McClurg's phone contained internet searches on topics including how to make death look like an accident or suicide and how seizures can cause death; and McClurg escaped from the county jail after he was arrested.  *Id.* at 4-5.

This Court has already found that McClurg's conviction for murder was supported by sufficient evidence.  In light of the overwhelming evidence presented of his guilt as described above, evidence that pills would not fully dissolve in liquids would not have affected the outcome of McClurg's trial.  Notably, the evidence presented at trial revealed that Victim grimaced when drinking the liquid, her mother overheard McClurg discussing with Victim whether he put something in her drink, and McClurg instructed Victim to drink the liquid no matter how bad it tasted.  As such, the evidence presented at trial was consistent with McClurg's argument that the pills were not fully dissolved.  The jury nevertheless found McClurg guilty of murder.

### 3. Ground Three

McClurg next argues that his wife's mental history and past suicide attempts were not mentioned at trial.  *Id.* at 7.  He states that his attorneys "roll[ed] over for [the] State by agreeing not to mention" this evidence.  *Id.*  The Court construes this claim as an ineffective assistance of counsel claim.  Indeed, McClurg raised this ineffective assistance of counsel claim in his post-conviction motion but defaulted the claim by failing to raise it in his appeal from the denial of post-conviction relief.

Trial counsel testified at McClurg's post-conviction relief hearing that he considered presenting a defense that McClurg's wife had committed suicide, but he knew that the State had rebuttal evidence to counter this defense.  (Doc. 5-12 at 21.)  Trial counsel testified that there

9

was concern about such evidence opening the door to other unfavorable evidence to McClurg. *Id.* The motion court denied McClurg's claim, holding it was a strategic decision not to pursue a suicide theory. *Id.*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Here, the motion court properly applied *Strickland* in finding trial counsel's performance was not deficient. Further, McClurg is unable to demonstrate prejudice due to counsel's failure to introduce this evidence in light of the overwhelming evidence of McClurg's guilt.

  4. **Ground Four**

In his final ground for relief, McClurg argues that he had an alibi. *Id.* at 9. He explains that the State claimed that "at a certain time my wife was on [the] phone with her mother that she told her mother I was coming down the drive yet I had an alibi which supported I was miles away…" (Doc. 1 at 9.)

The evidence presented at trial demonstrated that the victim's mother was present and witnessed McClurg provide the Kool-Aid bottle to the victim and convince her to drink it. Consequently, any evidence that McClurg was not coming down the driveway when the victim was on the phone with her mother prior to the poisoning would not exonerate him of the murder.

### VII.  Petitioner's Motions

As previously noted, McClurg has filed multiple motions seeking to submit additional evidence, and has filed a motion to reconsider this Court's order denying previous motions to submit new evidence.  (Docs. 21, 22, 24.)

The Court has found that the instant petition is untimely, petitioner's claims are procedurally defaulted, and petitioner's claims fail on their merit.  As such, any attempt to file additional evidence related to the claims raised in the petition would be futile.  Thus, McClurg's motions are denied.

### VIII.  Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  In this case, McClurg has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

### ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**IT IS FURTHER ORDERED** that petitioner's pending motions are **denied**.

      /s/ *Abbie Crites-Leoni*
      ABBIE CRITES-LEONI
      UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of July, 2023.